UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOBEY HENDERSON, # 237781,

    Petitioner,

                                                Case No. 08-cv-12139

v.

                                                HONORABLE STEPHEN J. MURPHY, III

CATHERINE S. BAUMAN,

    Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Jobey Henderson seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Henderson was convicted after a jury trial in the Gratiot Circuit Court of assault on a prison employee, Mich. Comp. Laws § 750.197c. He was sentenced as a fourth habitual offender to serve four to fifteen years in prison, consecutive to the sentences he was already serving when he committed the instant offense. For the reasons stated below, the Court will deny the petition.

**FACTUAL BACKGROUND**

The relevant facts were set forth by the Michigan Court of Appeals and are presumed correct on habeas review. 28 U.S.C. §§ 2254(d)(2), (e)(1).

> On March 25, 2005, defendant was an inmate in the St. Louis Correctional Facility. Officer Charles Cowling testified that he first noticed defendant in the programs building of the prison, getting resized for new inmate clothing. Cowling later saw defendant at the inmate bathroom, putting orange shorts and green sweat pants on under his inmate clothing. Cowling

---

[1] Henderson was incarcerated at the Oaks Correctional Facility at the time he filed his habeas petition. He has since been transferred to the Alger Correctional Facility, where Catherine S. Bauman is the warden. The proper respondent in a habeas case is the warden of the facility where the petitioner is incarcerated. Rule 2(a), 28 U.S.C. foll. § 2254. Accordingly, Bauman as the proper respondent here. The Court will order that the case caption be changed accordingly.

>told defendant that it was "against policy to be wearing orange shorts or anything else underneath his [inmate clothing]." Defendant replied with expletives directed toward Cowling, and then defendant threatened to kill Cowling and another corrections officer. Cowling immediately radioed for assistance because defendant needed to be put in the segregation unit due to his threatening behavior. Defendant then said, "If I'm going to the hole, I'm going for real," he hit Cowling twice with his fist on the right side of Cowling's neck, and he ran down the hall.

*People v. Henderson*, No. 279861, 2009 WL 153280, at *1 (Mich. Ct. App. Jan. 22, 2009) (per curiam).

Henderson waived his right to counsel and represented himself at trial. Following his conviction and sentence, he appealed to the Michigan Court of Appeals. Appointed appellate counsel filed a brief raising two claims: 1) trial court error in failing to instruct the jury on the lesser offense of assault and battery; and 2) the sentence was based on facts not admitted or proven beyond a reasonable doubt. Henderson also filed his a pro se brief raising four additional claims: 1) unwarranted delay in filing the charges against Henderson and bringing his case to trial; 2) denial of the a right to present a defense; 3) ineffective assistance of counsel; and 4) incompetency.

The Michigan Court of Appeals affirmed in an unpublished opinion. *Id.* Henderson sought leave to appeal in the Michigan Supreme Court, raising four claims: 1) ineffective assistance of trial counsel; 2) incompetency; 3) newly discovered evidence in support of a defense; and 4) prosecutorial misconduct. The Michigan Supreme Court denied leave to appeal in a short order. *People v. Henderson*, 483 Mich. 1113 (2009).

Henderson then filed a federal habeas petition raising the claims he presented to the Michigan Supreme Court. The warden contends that all four claims lack merit.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

Henderson is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

The standard is a high one: "a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation and internal quotation marks omitted). In practice, then, a federal court must "determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

## DISCUSSION

A. <u>Ineffective Assistance of Counsel</u>

Henderson claims first that his trial counsel was constitutionally ineffective. To prevail, he must show that his attorney's performance was objectively unreasonable and

that his attorney's failings so infected the proceedings as to make the trial unfair and verdict unreliable. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

Henderson asserts first that his appointed trial counsel was ineffective for failing to pursue a number of legal challenges prior to trial. Henderson chose to represent himself at trial, after being properly warned of the consequences of doing so:

The Court: It's your desire to represent yourself?

The Defendant: Yes, it is--

The Court: You understand that you will be trying this case against the prosecuting attorney, who is a trained attorney, who has prosecuted cases in this county for over twenty years?

The Defendant: Yes.

The Court: You understand that you will be bound to the same rules of evidence that the prosecutor is bound to?

The Defendant: Yes.

The Court You understand that I will not allow you to ask improper questions?

The Defendant: Yes.

The Court: You understand that I will not allow you to present evidence in any way that is improper?

The Defendant: Yes.

The Court: You understand that I will not allow you to rattle on to the jury, or make any statements to them except as allowed by court rule?
The Defendant: Yes.

The Court: You understand that in my opinion, you would be [at] a great disadvantage attempting to represent yourself?

The Defendant: I'm already--disadvantaged because I'm black.

The Court: Do you understand what I just said, sir?

The Defendant: Yes, sir.

> The Court: Okay. And it's your desire to represent yourself in this matter?
>
> The Defendant: Yes.
>
> * * *
>
> The Court: I'll tell you once again, Mr. Henderson, if you chose to represent yourself in this case, it's against the advice of the Court; the Court thinks you are placing yourself at a great disadvantage. You wish to do so anyhow?
>
> The Defendant: I wish to do so anyhow, sir.
>
> The Court: All right. Then the Court will allow you to act as your own representative. I'm going to instruct [defense counsel] to remain to assist you in the presentation of this trial.

Motion Hr'g Tr. 29-31, June 21, 2006.

Henderson does not challenge the validity of his waiver of the right to counsel. It follows, therefore, that his claim of ineffective assistance of counsel fails. "[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

Henderson's challenge to the conduct of stand-by counsel is also without merit. The Sixth Circuit held that "even if stand-by counsel failed to act in some manner, such failure is an incidental effect of [petitioner's] decision to assert his *Faretta* rights, and not the basis of an ineffective assistance of counsel claim." *Holmes v. United States*, 281 F. App'x 475, 480-81 (6th Cir. 2008); *see also Wilson v. Parker*, 515 F.3d 682, 697 (6th Cir. 2008) ("To the extent [stand-by counsel] failed to act during trial, [the criminal defendant] merely suffered the consequences of his decision to proceed pro se.").

Henderson also challenges the conduct of counsel prior to Henderson's decision to represent himself. But this claim fails as well. Henderson's motion to represent himself

5

was granted on June 21, 2006, and trial did not begin until eleven months later, on May 23, 2007. Any motions or investigation Henderson claims his counsel should have performed while representing him became Henderson's responsibility when he assumed his own defense. In fact, the trial court entertained oral argument on no less than thirty-nine different pretrial motions filed by Henderson. *See* Hr'g Tr. Aug. 29, 2006; Hr'g Tr. Nov. 16, 2006. It appears the issues Henderson claims counsel was ineffective for not raising were in fact raised and decided by the trial court.

Because Henderson does not challenge the validity of his decision to represent himself, his ineffective assistance of counsel claims fail, and the decision of the state court rejecting his claims was not unreasonable. Habeas relief is denied with respect to these claims.

B. Competence

Henderson claims next that he was not competent to stand trial. The Michigan Court of Appeals considered this claim waived because it was inadequately presented in Henderson's pro se brief. The warden expressly asserts, however, that this claim is not procedurally defaulted. The last state court decision to consider the claim was the trial court, which found that Henderson was competent to stand trial:

> Well, the unrebutted testimony the Court has heard, then, taken in conjunction with the psychological evaluations that have been filed by both Dr. Hill and Dr. Drozd is that Mr. Henderson had a history of some psychological problems or issues, but they are in the mild to moderate range, not severe, and do not rise to the level of being incompetent to stand trial as defined by statute. Therefore, the Court finds that Defendant competent to stand trial, and I think we need to establish a date at this point and time, don't we?

Hr'g Tr. 22, June 21, 2006.

A criminal defendant who is incompetent may not be tried for any crime. *Godinez*

6

*v. Moran*, 509 U.S. 389, 396 (1993); *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The test for a competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). A court should consider evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion concerning his competence. *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). A state may presume that a defendant is competent to stand trial and require him to prove incompetency by a preponderance of the evidence. *Medina v. California*, 505 U.S. 437, 449 (1992).

The state trial court's decision that Henderson was competent to stand trial did not involve an unreasonable determination of the facts. 28 U.S.C. §§ 2254(d)(2), (e)(1); *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (noting that competency to stand trial is a factual issue); *Cowans v. Bagley*, --- F.3d ----, 2011 WL 1496778, at *4 (6th Cir. Apr. 21, 2011) (same). At the competency hearing, Dr. Michele Hill testified that she evaluated Henderson for competency to stand trial and for criminal responsibility at the Forensic Center. She described the various tests performed, and she testified that she conducted a clinical interview. Dr. Hill opined, based on the test results and interview, that Henderson understood the nature and object of the proceedings against him. Hr'g. Tr. 15, May 25, 2006. Dr. George J. Drozd likewise testified that he conducted testing, interviewed Henderson, and reviewed Henderson's institutional record. He testified that "there were no indicators that would suggest that [Henderson] had any substantial problems understanding the workings of the legal system, or applying a rational approach to the charges against him, nor his ability to appreciate the charges that were pending against

him." Hr'g Tr. 8-9, June 21, 2006. He concluded that "there was no indication to me -- in my observations, my interactions and the test results, to conclude anything other than [Henderson] was competent to stand trial. *Id.* at 9. Henderson offered no evidence tending to indicate that he was incompetent to stand trial. Moreover, Henderson's competency is apparent from the trial record. He coherently argued pretrial motions and he conducted a pro se defense, demonstrating that he had a rational and factual understanding of the proceedings against him. Accordingly, the state trial court's adjudication of this claim was reasonable, and Henderson has not demonstrated entitlement to habeas relief on this claim.

C. <u>New Evidence</u>

Henderson claims next that newly discovered evidence supports his innocence. He states:

> America reveals newly discovered evidence from citizen Kareem Wallace, inmate 298042. . . . The testimony will support citizen right 4 against self-incrimination and negative the 5 failure of prosecution to disclose evidence favorable. American will thus be able to prove 6 violation of double jeopardy, 7 denied effective counsel, and 8 right to appeal was intentionally hindered by Michigan as alleged in actions and inactions of citizen conspirators.

Petition, 7.

A petition for a writ of habeas corpus must set forth facts that give rise to a cause of action under federal law. *See Perez v. Hemingway*, 157 F. Supp. 2d 790, 796 (E.D. Mich. 2001). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Conclusory allegations in a habeas petition, without evidentiary support, do not provide a basis for relief. *See Payne v. Smith*, 207 F. Supp. 2d 627, 650 (E.D. Mich. 2002).

Henderson has failed to specify who Kareem Wallace is, what the substance of his testimony would be, or how it would support any of his claims. His vague claim that Wallace would support his claims "is a conclusory allegation 'unsupported by specifics' and subject to summary dismissal." *Owens v. Benson*, 439 F. Supp. 943, 945 (E.D. Mich. 1977). Habeas relief is not warranted on this claim.

D. <u>Prosecutorial Misconduct</u>

Henderson claims last that the prosecutor engaged in misconduct during the trial. The Michigan Court of Appeals denied relief on this claim:

> Likewise, defendant's argument that the prosecutor committed prosecutorial misconduct is also without merit. Defendant asserts that the prosecutor did not provide requested documents, but he does not provide any support for this assertion. We find no record evidence that defendant was denied any request. Defendant also alleges that the prosecutor called him a rapist and a molester. Again, defendant does not cite to the record and we find no such reference. Defendant has provided no evidence to support this allegation, and "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mitcham v. Detroit*, 355 Mich. 182, 203; 94 N.W.2d 388 (1959).

*Henderson, supra*, at *5-6.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). Whether the trial was fundamentally unfair is determined by evaluating the totality of the circumstances. *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). A court examines "the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993).

9

As did the Michigan Court of Appeals, this Court too finds no factual basis in the trial record for Henderson's arguments. The prosecutor's closing argument was unremarkable. The arguments focused on the evidence presented at trial — specifically, the testimony of the corrections officer Henderson assaulted. Likewise, there is no indication in the trial court record that any of Henderson's discovery requests went unaddressed by the trial court or unanswered by the prosecutor. Henderson makes one vague reference to a videotape of the assault being suppressed or destroyed, but the evidence presented at trial suggests that there was no security camera in the area where the assault occurred. Trial Tr. vol. 1, 176, May 23, 2007.

Henderson has failed to demonstrate that the prosecutor engaged in misconduct. Relief on this claim is not warranted.

E.  Certificate of Appealability

A petitioner must obtain a certificate of appealability from the district court or the circuit court before appealing the denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. 22(b). The district court must issued or deny a certificate when it denies relief. Rule 11, Rules Governing Section 2254 Cases, 28 U.S.C. foll § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

After review, and for the reasons stated above, the Court finds that Henderson has failed to make a substantial showing of the denial of a constitutional right with respect to

his claim. Reasonable jurists could not debate the Court's ruling on Henderson's claims. The Court therefore declines to issue a certificate of appealability.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability on any issue.

**IT IS FURTHER ORDERED** that Catherine S. Bauman be **SUBSTITUTED** as the Respondent and that the caption be **AMENDED** accordingly.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 11, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 11, 2011, by electronic and/or ordinary mail.

Carol Cohron
Case Manager